d'attaraylaw | law office of mainak d'attaray

1  Mainak D'Attaray (Bar No. 283999)
   111 West Ocean Boulevard, Suite 400
2  Long Beach, California 90802

3  ***Mailing Address***
   10292 Foothill Boulevard
4  Lake View Terrace, California 91342

5  Telephone:  (424) 703-5294
   Facsimile:   (855) 706-5294
6  E-mail: mdattaray@dattaraylaw.com

7  Attorneys for Plaintiff Barton Wayne Fishback

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

12  BARTON WAYNE FISHBACK, an      ) Case No.:
    individual,                     )
13                                  )
                                    )
14         Plaintiff,               ) **COMPLAINT FOR:**
                                    ) **(1)  SUPERSEDEAS WRIT OF**
15  vs.                             )      **PRELIMINARY**
                                    )      **INJUNCTION [28 U.S.C. §§**
16  JOE T. EDMISTON, individually and as )   **1651 & 1657];**
    the executive director of the Santa Monica ) **(2)  VIOLATION OF**
17  Mountains Conservancy and the   )      **PROCEDURAL DUE**
    Mountains Recreation and Conservation )   **PROCESS [42 U.S.C. §1983];**
18  Authority; WILLIAM C. STRATTON, ) **(3)  VIOLATION OF 14TH**
    individually and as the environmental )    **AMENDMENT**
19  health director of the Ventura County )     **SUBSTANTIVE DUE**
    Resource Management Agency;     )      **PROCESS (FAILURE TO**
20  RAYMOND GUTIERREZ, JR.,         )      **FOLLOW HONEST**
    individually and as the development and )   **GOVERNMENTAL**
21  inspection manager for the Ventura )        **PROCESS) [42 U.S.C. § 1983];**
22  County Public Works Agency; CHARLES ) **(4)  VIOLATION OF 14TH**
    GENKEL, individually and as the )      **AMENDMENT EQUAL**
23  manager of the Technical Services Section )   **PROTECTION;**
    of the County of Ventura Environmental )  **(5)  VIOLATION OF THE 5TH**
24  Health Division; the COUNTY OF  )      **AND 14TH AMENDMENT**
25  VENTURA PUBLIC WORKS AGENCY; )       **TAKINGS CLAUSE;**
    the COUNTY OF VENTURA          )
26  RESOURCE MANAGEMENT            )
27

28

1

**COMPLAINT**

AGENCY; and DOES 1 through 10, inclusive,

      Defendants.

**(6) VIOLATION OF THE CALIFORNIA CONSTITUTION TAKINGS CLAUSE [CAL. CONST. ART. I, § 19];**

**(7) DECLARATORY AND INJUNCTIVE RELIEF— FEDERAL PREEMPTION;**

**(8) DECLARATORY AND INJUNCTIVE RELIEF— VIOLATION OF THE DORMANT COMMERCE CLAUSE;**

**(9) VIOLATION OF LEGITIMATE POLICE POWERS;**

**(10) DECLARATORY AND INUNCTIVE RELIEF— INTENTIONAL MISINTERPRETATION OF STATE LAW; AND**

**DEMAND FOR JURY TRIAL.**

     **COMES NOW** plaintiff Barton Wayne Fishback ("Plaintiff" and/or "Fishback") and alleges as follows upon information and belief:

## BACKGROUND

*Uniformity in Building Codes*

    1.    In 1970 the California Legislature made a finding that uniformity in building standards throughout the state is a matter of significant concern and importance, since uniformity would reduce housing costs. Almost five decades later, the lack of affordable housing and particularly emergency shelters for the homeless is routinely front-page news in the Los Angeles—the "Nation's Capital of Homelessness." Extreme changes to the California Building Code's minimum standards without justification by Counties and municipalities is to blame.

2.     The lack of legislative mandate for uniformity and standardization in local general plans, zoning, planning, environmental health, and other land use related ordinances compounds this crisis.  The lack of restrictions combined with unbridled discretion has reversed what should be recognition of land uses by right or ministerial approvals, thereby contributing to extremely high housing costs and illegal barriers to the rightful uses of private property.

3.     Unconstitutional regulations and ordinances have also curtailed or nullified several federal and state programs such as the United States Department of Agriculture ("USDA") Natural Resources Conservation Service's ("NRCS") land conservation programs and policies, the California Resource Conservation District ("RCD") land conservation programs, the United States Environmental Protection Agency ("EPA"), the Clean Water Act ("CWA"), and the Los Angeles Regional Water Quality Control Board's ("LARWQCB") non-point source pollution prevention measures for water quality and conservation, the Resource Conservation and Recovery Act ("RCRA"), California EPA, CalRecycle, the California Integrated Waste Management Act ("CIWMA"), and the recently funded Senate Bill 5, California Drought, Water, Parks, Climate, Coastal Protection, and Outdoor Access for All Act of 2018.

4.     Since 2005, the County of Ventura (the "County") began enforcing unconstitutional regulations to prevent Plaintiff from using his agriculturally zoned property for the very purpose for which it is zoned, by issuing cease and desist orders, notices of violations and corrective action orders.  Most recently as detailed below the County has harassed and blocked trucks delivering top soil to cover bedrock, which is needed to plant crops on Plaintiff's agricultural land.  The County's illicit actions have prevented Plaintiff from making his land useable for agriculture or other purposes such as providing green jobs for the homeless workers he hires to help them gain meaningful employment and opportunity.

5.     The Ventura County Building Code ("VCBC") is the most flagrant example of manipulation of state statutes, regulations, and local ordinances.  In 1999, the California Court of Appeal made clear local governments were limited in their abilities to change the California Building Code ("CBC"), "[b]y enacting uniform statewide building law, and mandating that local governments adopt Uniform Building Code ("UBC") and California Building Standards Code ("CBSC"), the Legislature has shown its intent to preempt local governments from legislating on the subject, except as narrowly permitted under the Health and Safety Code [Cal. Health & Safety Code §§ 17958, 17958.5; Cal. Govt. Code § 50022.1 et seq]."  The Appellate decision concerned amendments to the grading code and made clear that "[t]he State Housing Law expressly requires cities and counties to adopt its minimum building standards, including those regarding grading and excavation."

6.     In 2007, while Fishback was in litigation with the County of Ventura, the County made egregious and massive changes to the grading code found in Appendix J of the CBC despite the ruling in *Leslie v. Superior Court of Ventura County (Southern California Edison Company)*, 73 Cal.App.4th 1045 (1999), that prohibits such amendments because the state legislature has clearly expressed its intent to fully occupy the field of building standards, including excavation and grading.  Nonetheless, the County amended its grading code to bolster its position in litigation and prevent Fishback and all others to repair, maintain, and improve their land in the future, which precipitated this complaint.

7.     California Health and Safety Code section 17958.5 restricts "changes or modifications," referred to as local amendments that "are reasonably necessary because of local climatic, geological, or topographical condition."  Section 17958.7 requires "express finding" for the changes and modifications.  Contrary and inimical to state standards and uniformity, the County's Appendix J is filled with amendments that:   (i) have no express findings; (ii) are unrelated to climate, geological, or topographical conditions; (iii) nullify portions of the CBC; (iv) nullify other laws; (v)

reverse the intent of statutes, regulations, and other County ordinances; (vi) transfers CBC enforcement authority to other agencies; and (vii) transfers other agencies' authority to the County Building Official.

8.     Ventura County Building Code Appendix J, section J108.4 FILL MATERIAL is one example of an unlawful and unconstitutional ordinance as follows:

> J108.4 FILL MATERIAL. Fill material shall not include organic, frozen or other deleterious materials. No rock or similar irreducible material greater than 12 inches in any dimension shall be included in fills. Fill material shall not include solid waste, as defined in the Ventura County Ordinance Code Section 4701-26, and the California Public Resources Code Section 40191, including but not limited to, construction waste, demolition waste, or inert debris, without written authorization from the County of Ventura Environmental Health Division and. if required, a permit from the County of Ventura Planning Division.

There are no express findings.  There are no climatic, geological, or topographical conditions that justify amending these sections on commonly used fill materials.

9.     The phrase "similar irreducible material" refers to commonly used grading fill material.  These are listed in federal, state, and local specifications such as concrete, asphalt, brick, tile, etc., and generally referred to as inert materials.  Inert material is defined in both the CBC Part 11 CalGreen and subsequent sections.  The reuse and recycling of these materials are also addressed in Title 14 Regulations at Division 7, Chapter 3, Article 5.9, Section 17380, *et seq.*, and Ventura County Ordinance 4421:

> AN ORDINANCE AMENDING VENTURA COUNTY  ORDINANCE CODE DIVISION  4,  CHAPTER  7,  ARTICLE 3, SECTION 4781 REGARDING      RECYCLING      AND      DIVERSION      OF CONSTRUCTION  AND  DEMOLITION  DEBRIS.
>
> Sec. 4781-2  Definitions - For the purposes of this Section 4781, the following words and phrases shall have the meanings respectively ascribed  to  them  by  this  Section  4781-2

(t) "Inert Material" means nonputrescible solid material including, without limitation, soil, rock, gravel, concrete, asphalt, brick, ceramics, metal and similar material not containing hazardous waste, radioactive waste, medical waste, soluble pollutants or decomposable matter.

These materials are required to be reused or recycled and are enforced by the Building Official in charge of grading and the Integrated Waste Management Division that enforces the local recycling ordinance and CalGreen.

10.   These local amendments to the CBC prohibit disposal of solid waste but then describe groups of materials that are intended to be disposed pursuant to Title 14, Division 7, Chapter 3, Article 5.95 and vests the authority to EHD to enforce and regulate the disposal of solid waste.  This contradicts multiple CBC requirements that inert materials should be reused and recycled.  Under the County's scheme, the Building Official has abdicated its enforcement authority to EHD to determine what is solid waste disposal versus enforcing reuse and recycling of select materials, and what is grading.   This amendment also violates the priorities of reuse and recycling over solid waste disposal set forth in the PRC, Division 30 of the CIWMA.

11.   The County created a fraudulent permitting scheme by divesting the CBC Building Official's authority and granting "the County of Ventura Environmental Health Division and . . . Planning Division" authority to regulate grading.

12.   A more complex example of illegal changes to the CBC is the combination of related code sections as follows:

SECTION J102:  DEFINITIONS

AGRICULTURAL GRADING.  Grading to enhance or conduct farming, including animal husbandry and the production and management of crops (including aquatic crops) for food, fiber, fuel and ornament as defined in Section 8102-0 of the Ventura County Non-Coastal Zoning Ordinance. Agricultural grading does not include grading for buildings, barns,

equestrian facilities, permanent structures with a foundation, and parking lots.

APPROVAL.  When the proposed work or completed work conforms to this appendix, as determined by and to the satisfaction of the Building Official

HILLSIDE EROSION CONTROL ORDINANCE. A Ventura County Ordinance (Ord. Nos. 3539 and 3683) that regulates agriculture grading in critical erosion areas. This ordinance is administered by the Ventura County Resource Conservation District and requires property owners who desire to perform agricultural grading to enter into a cooperative agreement with the Resource Conservation District and prepare a Hillside Erosion Control Plan before any grading is commenced

SECTION J103.2 EXEMPTIONS.  A grading permit shall not be required for the following.

10. Grading to support irrigated agricultural production under an approved hillside erosion control plan by the Ventura County Resource Conservation District (VCRCD) in compliance with the Hillside Erosion Control Ordinance (HECO). Should the VCRCD exempt or deny a property owner from the requirements of the Hillside Erosion Control Ordinance, the property owner is required to obtain a grading permit or a formal grading permit exemption from the Building Official.

These changes are unsupported by express findings; they nullify all or portions of the County Hillside Erosion Control Ordinance ("HECO") and the Ventura County Land Development Manual that has been "adapted by the County for regulating . . . land grading."  These changes reverse the intent of statutes, regulations, ordinances, and federal, state, and local conservation programs.  These changes transfer authority from the RCD and the NRCS to the discretion of the Building Official.

13.    The County building code amended the CBC in incomprehensible ways:

J102 DEFINITIONS

APPROVAL. When the proposed work or completed work conforms to this appendix, as determined by and to the satisfaction of the Building Official

ISOLATED, SELF-CONTAINED AREA. That portion of a parcel of land or of contiguous parcels of land under single ownership which meets any one of the following three criteria The portion is used for growing crops or raising livestock for sale, but not for building sites or for the construction of earthfills which will impound water to a depth of more than 5 feet.

J103.2 EXEMPTED WORK

When approved by the Building Official, grading in an isolated, self-contained area for agricultural grading or oil field grading, provided there is no danger to the public or public property, and that such grading will not adversely affect adjoining properties. The Building Official will require the owner of the property to have a plan prepared showing the location of the grading in accordance with Sections J105.1, J105.2, and J105.3. A written agricultural grading/oil field grading exemption will be issued that may require the property owner to provide adequate sediment and erosion control in accordance with Section J111 and J112, and provide for limited site inspections by the property owner's engineering consultants who prepared the plans and reports. A flat fee will be charged by the Building Official to review and approve this type of grading exemption in accordance with the adopted fee schedule approved by the Board of Supervisors. The property owner shall obtain letters from his/her engineering consultants that states that the owner performed the grading in accordance with their plans, specifications, and recommendations at the conclusion of the project and forward said letters to the Building Official for record keeping. The written agricultural grading/oil field grading exemption shall have a time limit not to exceed 24 months from the date of issuance by the Building Official. The agricultural grading/oil field grading exemption does not apply to projects which otherwise would require a discretionary grading permit.

The comparable CBC exemption merely states:

Grading in an isolated, self-contained area, provided there is no danger to the public and that such grading will not adversely affect adjoining properties.

This simple straight forward exemption requiring no approval has been turned into a convoluted exemption that completely reverses the definition of isolated and self-

8

**COMPLAINT**

contained area for agricultural use and requires a permit which is contrary and inimical to an exemption and all subject to the discretion of the Building Official. These changes to the CBC are unsupported by express findings, nullifies all or portions of the HECO and the Ventura County Land Development Manual that has been "adapted by the County for regulating . . . land grading." It reverses the intent of statutes, regulations, ordinances, and federal, state, and local conservation programs. It transfers authority from the RCD and the NRCS to the discretion of the County Building Official. In addition, since an approved grading exemption includes fill material, it includes authority transferred to the EHD and Planning Division.

14.     When other statutes, regulations and ordinances do not fit the County's agenda, they are simply ignored or the County makes up arguments that are absurd. For example, the County's zoning code, section 8107-36, states:

> Section 8107-36 Regulations Governing Waste Handling, Waste Disposal and Recycling Facilities, Organics Processing Operations and Waste Hauling Yards

> Section 8107-36.1 - Purpose The County of Ventura encourages land uses which enable citizens to efficiently reuse and recycle the solid waste they generate, to minimize the amount of solid waste sent to waste disposal facilities, and to assist in meeting the recycling goals mandated by the state. This section sets forth minimum standards and regulations for the siting, design, and operation of these types of operations and activities.

> Section 8107-36.3.2 - Recyclables Collection Centers

> b. No Zoning Clearance or modification of any original entitlement permit shall be required when such centers are established in conjunction with an approved principal use and are on lots larger than one acre

Plaintiff's agricultural grading project is far more efficient and economical process of reusing or recycling fill materials than a traditional recycling center.

**Agenda by Joe**

15.     Joe Edmiston, the executive director of the Santa Monica Mountains Conservancy ("SMMC") and the Mountains Recreation and Conservation Authority ("MRCA") is arguably the most powerful government official in Southern California, including Los Angeles, Ventura, Orange, San Bernardino, and Riverside counties.  He is a modern-day Robert Moses or William Mulholland, unelected officials who controlled laws and government programs in pursuit of their personal agendas.  For the last 40 years, Edmiston has opposed nearly every proposed development project on undeveloped land in Los Angeles and Ventura counties, and previously developed land such as repurposing the Santa Susana Field Laboratory.

16.     Edmiston's influence reaches beyond opposing development projects.  It includes spending billions of dollars to purchase vacant land, promoting legislation that virtually eliminates all practical use of private land that he has selected for preservation, paying lobbyists, obstructing access to privately owned land, filing false complaints against private property owners, and pressuring law enforcement to criminally prosecute private land owners on trumped up violations.  To obtain law enforcement support and the money needed to purchase land, Edmiston bribes high-profile politicians, such as former Los Angeles County Supervisor Michael D. Antonovich by creating parks bearing their names, or places people on prestigious Boards, such as Ventura County Supervisor Linda Parks and Irma Munoz.

17.     The SMMC is required by state law to serve the public interest in maintaining sufficient open space, wildlife habitat and recreational opportunities for people residing in the nearby urbanized environment.  Further, the SMMC's enabling statute calls for it to work with private landowners using "voluntary incentives" to allow fair acquisition of land from a "willing seller," and the California and United States Constitutions allow for the exercise of eminent domain upon payment of just compensation to acquire lands from a private owner to advance the SMMC's statutory goals.  However, what transpired since 2005 and is ongoing is a coordinated effort between Defendants and various other public entities and agents, directed by

Edmiston, to blatantly violate Plaintiff's constitutional and private property rights in the hopes of dispossessing Plaintiff of his property.

18.    The SMMC's purchase of the lands adjacent to Plaintiff's property was a component of its greater plan detailed in a map entitled "Parklands and Wildlife Corridors Map for Santa Susana Mountains, Simi Hills, and Santa Monica Mountains."  Huge portions of private property, including Plaintiff's properties in both Los Angeles and Ventura counties, are designated as "Important Wildlife Corridor Parcels To Be Protected."  Although the SMMC may lawfully purchase conservation easements, long-term options to purchase, or rights of first refusal from private landowners, it may not lawfully conspire with County code enforcement personnel to "protect" parcels for eventual SMMC acquisition with arbitrary, discriminatory, and meritless code enforcement as a means to prevent lawful use of the land by its owner.

### Joe versus the Homeless

19.    Edmiston's promotion of unconstitutional laws extends far beyond those that have affected Plaintiff.  Plaintiff hires the homeless to work on his ranch, to provide them with opportunities to learn skills, earn money and find opportunities they would not otherwise have.  By the County's actions, Fishback's homeless workers have been deprived training, jobs and a place to live in a clean and safe environment away from the industrial zoned areas where they are forced to live in squalor and unsanitary conditions.  To be affordable, permanent, transitional and emergency housing is dependent on low cost land located in agricultural and open space zoned areas.  This, along with low cost factory built housing, and minimal permitting are fundamental to reducing the homeless population and increasing affordable housing.  But, local ordinances have restricted homeless shelters to high cost, high density, urban and industrial zones.

20.    Plaintiff has a long-range vision of constructing emergency shelters/ affordable housing villages on land that is zoned open space or for agricultural use.

However, just as important as shelters and housing is training and jobs.  For many years, Plaintiff has been providing training and jobs to economically disadvantaged and the homeless populations.  These jobs have implemented the conservation and land improvement programs cited above.

*A Private Landowner Who Simply Wants to Use His Agricultural Property for Agriculture*

21.    Fishback grew up on a farm. At age 12, his family left their farm in rural Illinois and moved to Washington D.C. where his father, a college professor, took a senior position with the USDA.  Awe struck by the beauty and grandeur of the District's national monuments, planning and buildings, Fishback resolved to become an architect.

22.    For many years, Fishback was an owner and senior executive in several of the largest and most prestigious architecture and engineering firms in the nation— on corporate boards, executive committees, and as the New York office director for the largest architectural firm in the United States.  Fishback has been an architect and urban planner for over 50 years on projects throughout the world.  Fishback was a leader and pioneer in planning and architectural concepts that have since become mainstream policies and/or mandatory regulations, such as smart growth, sustainability, and green building practices.

23.    Since the 1973 oil embargo, Fishback's practice emphasized natural resource conservation and recovery, including, specifically, reduction, reuse and recycling of waste materials.  Energy conservation and recycling are two of the highest impact practices in green building projects.

24.    The Fishback family, and now Plaintiff, has maintained farming operations on their various properties over the years in Illinois, Mississippi, and now in California.  After an illustrious professional career, Fishback purchased rural agricultural property on the outskirts of the Los Angeles metropolitan area, where he settled, to create a "green" sustainable farming and ranching operation—far enough

from urbanized areas to be feasible yet close enough to be a benefit to the nearby densely populated communities—promoting natural resource conservation through reuse and recycling principles as set forth and prioritized in federal and state laws.

25.     Fishback owns over 100 acres of rugged mountainous land located in *an isolated and self-contained area* south of Simi Valley in the County, in the Simi Hills, along a private road commonly referred to as North American Cutoff, assessor's parcel numbers—

|     |        |               |
|-----|--------|---------------|
| i.    | 646-0-170-055 |
| ii.   | 649-0-010-010 |
| iii.  | 649-0-020-160 |
| iv.   | 646-0-170-055 |
| v.    | 649-0-020-010 |
| vi.   | 649-0-020-030 |
| vii.  | 649-0-020-050 |
| viii. | 649-0-020-070 |
| ix.   | 649-0-020-090 |
| x.    | 649-0-020-100 |
| xi.   | 649-0-020-110 |
| xii.  | 649-0-020-120 |
| xiii. | 649-0-320-130 |
| xiv.  | 649-0-320-140 |
| xv.   | 649-0-320-170 |
| xvi.  | 649-0-320-180 |
| xvii. | 649-0-320-190 |
| xviii.| 649-0-320-220 |
| xix.  | 649-0-320-230 |
| xx.   | 649-0-320-240 |
| xxi.  | 649-0-320-250 |

| | | |
|---|---|---|
| xxii. | 649-0-320-260 |
| xxiii. | 649-0-320-270 |
| xxiv. | 649-0-320-280 |
| xxv. | 649-0-320-290 |
| xxvi. | 649-0-320-300 |
| xxvii. | 649-0-320-310 |
| xxviii. | 649-0-320-330 |
| xxix. | 649-0-320-340 |
| xxx. | 647-0-050-100 |
| xxxi. | 647-0-065-030 |

(collectively, the "Property"). The Property is a large combined parcel of mostly fallow and highly eroded canyons and ravines, zoned for open space, but with very little inherent economic value, which Plaintiff is enhancing and creating value on the Property with his cultivation and preparation of level arable agricultural land. Fishback engaged in the activities at the heart of this dispute relying on the Resource, Recovery and Conservation Act ("RCRA"), the NRCS, and the Clean Water Act ("CWA").

26. Beginning in 2005, the County of Ventura used unconstitutional regulations to stop Plaintiff's use of his Property, by issuing cease and desist orders, notices of violations and corrective action orders. Most recently, the County and its agents harassed and blocked trucks delivering top soil to cover bedrock, which is needed to plant crops. Plaintiffs are not only being prevented from making their land useable, but this is causing the loss of jobs for the disadvantaged homeless workers Plaintiff hires.

27. Over the years, the County issued various orders, took various unconstitutional actions in furtherance of its efforts to eventually dispossess Fishback of his property for the benefit of the SMMC and Edmiston's political reputation and legacy. During this time, the County also engaged in a pattern and practice of

obstructing and manipulating its departments, divisions and employees, as well as other governmental agencies to violate Fishback's constitutional rights.   Moreover, Defendants arbitrarily interpreted and enforced the Ventura County Code, specifically the zoning and grading ordinances.[1]

28.   Defendants demonized Plaintiff by characterizing his agricultural construction work as an illegal dump.   Defendants never articulated a consistent or coherent objection to Plaintiff's plans for the Property.   Instead, Defendants cited Plaintiff for various violations that were often inconsistent, unmeritorious, and obvious attempts to prevent Plaintiff from doing anything at all with the Property. During this time, Defendants also engaged in a pattern and practice of encouraging and manipulating other governmental agencies to violate Plaintiff's constitutional rights.   Defendants also arbitrarily interpreted and enforced the PRC in furtherance of their conspiracy.

29.   As a retired licensed architect, Plaintiff has been planning to use his land for the principles of land restoration, sustainability, recycling, locally sourced food, water conservation, and production of renewable energy that harnesses the full potential of existing parcels while enhancing the most important environmental qualities of the land.   Combining his agricultural roots with his architectural, engineering, and urban planning experience, Plaintiff took discarded construction materials, reused and repurposed them to transform his rugged and fallow property with highly eroded and unstable terrain into beautiful and stable terraced pastures for livestock and planting.   Although terracing is a thousands of years old method of creating level and arable land, Plaintiff's approach was innovative for using inert

---

[1]In fact, the County of Ventura's actions at issue in this case mimic *verbatim*, the manner and method by which the County of Los Angeles took illegal actions against Plaintiff in an attempt to dispossess him of his multi-acre property in Chatsworth.   And a prior attempt to prevent Fishback from Plaintiff filed suit in California Superior Court in 2006 to prevent the County of Ventura from unjustly taking Plaintiff's Ventura County ranch; that matter is currently awaiting trial on other parts.   And both counties are aware of all the proceedings in the other county against Fishback.

materials such as brick, asphalt, and broken concrete, which are processed and sorted by the generators, and then transported to the Property for further processing and segregated for specific uses, reconstituted and incorporated into construction of the terraces, road work, retaining walls, etc.

30.    Reuse and recycling of these materials has long been an industry practice and RCRA further encouraged the same. Specifications for reuse and recycling in the manner and methods employed by Plaintiff are widely published in and by California Standard Specifications for Public Works Construction (the "Greenbook"), California Department of Transportation ("CalTrans"), the USDA, CBC, PRC, etc. The once voluntary practice is now mandatory pursuant to the California Integrated Waste Management Act that set forth recycling requirements at PRC, section 42700, *et seq.*

31.    The current CBC, part 11, "CalGreen" statutes, CalRecycle regulations, and local ordinances define requirements for reuse or recycling of construction and demolition waste.  Checking the project waste management plan, submitted prior to commencement of a project, and a review of the same at the termination of a project ensures compliance.  In practice, the process in the field commences with the generator handing the construction and demolition waste by transporting the material to a permitted processing facility or separating the material on site, which is defined as "source separated" or "separated for reuse." Based on the latter process, Plaintiff only accepted specific types of inert materials e.g. soil, rock, concrete, asphalt, and minor amounts of masonry, tile and stucco that were source separated or separated for reuse.

32.    The County, its various departments, divisions, bureaus and employees, has coordinated efforts over many years to dispossess Fishback of his land, and the use by right thereof, through the misapplication of solid waste and grading ordinances, county codes and state law, otherwise legitimate governmental process and under the color of authority.  This was done so that the County, and/or Edmiston, could acquire,

inversely condemn and/or take Fishback's land for various public purposes at a severely reduced or zero value.

33.     Defendants committed wrongful acts including, but not limited to (i) intentionally violating internal governmental policies and procedures, (ii) intentionally misrepresenting and misapplying relevant provisions of the county solid waste disposal ordinance and building code, (iii) knowingly and impermissibly treating Plaintiff and the Property disparately from other similarly situated persons and property without rational basis, (iv) lying in affidavits to obtain inspection warrants and filing false returns with the Court, (v) issuing unlawful notices of violations and stop work orders under the color of authority, and (vi) unlawfully interfering with and directing other agencies and law enforcement in an effort to interfere with Plaintiff's constitutional rights and impose punitive measures on Plaintiff.

34.     In April 2006, the County issued a cease and desist order that prevented Plaintiff from reusing clean and broken concrete and minor amounts of asphalt, brick, and tile in grading fill. Ten years later, in 2016, and far better educated on the statutes, regulation and ordinances governing the subject materials and activities, Plaintiff decided to repair, maintain, and improve his land using only soil and broken concrete. A hostile neighbor, Robert Mionske, complained to the County. The County issued threatening letters to the truck companies and Plaintiff. At the time Plaintiffs did not have the financial resources to challenge the threats and had to terminate an environmentally and economically beneficial activity to the detriment of the public and the homeless workers Plaintiff employs.

35.     Again, in July 2018, Plaintiff decided to import only soil to be used for terracing and topsoil over bedrock, which is an exempt activity under County ordinance and does not require a grading or zoning permit. Again, Mionske complained to the County. This time, Plaintiff challenged the County's threats, harassment, and blatant lies to law enforcement and to the Ventura County Superior

Court.   However, the County issued a notice of violation on dubious grading violations, which are simply not supported when the activity in question concerns the importation of top soil on agricultural parcels.   Now, Defendants have no regard for law or procedure.   Defendants, all governmental actors, unabashedly seek to deprive Plaintiff of his Property with no regard for Plaintiff's constitutional rights.

## JURISDICTION – FEDERAL QUESTION AND VENUE

36.     Plaintiff invokes 28 U.S.C. § 1651 & 1657, 28 U.S.C. § 1331, 28 U.S.C. §1343(a)(3), the United States Constitution, article III, § 2, the United States Constitution, article IV, § 2, the United States Constitution article VI, § 2, 28 U.S.C. § 1367(a), and substantive clauses of the Fifth and Fourteenth Amendments through 42 U.S.C. § 1983 and 28 U.S.C. § 2201.

37.     Plaintiff seeks an expedited injunction pursuant to 28 U.S.C. § 1651, to stay execution of unconstitutional acts.   The remaining claims are based on violations of procedural and substantive due process, unconstitutional regulations and actions levied against Plaintiff and his interests by state and local officers administering federal and state enactments. The federal programs and acts implicated are the United States Department of Agriculture's Natural Resources Conservation Services—a federal program administered by the state to encourage erosion control and conservation ("NRCS"), and the resource conservation and Recovery Act ("RCRA") and the Clean Water Act ("CWA").

38.     Venue is proper in the Central District of California Pursuant to 28 U.S.C. § 1391(a) because the County of Ventura, and its various officers also defendants, are subject to personal jurisdiction within this judicial district. Moreover, the events giving rise to this action occurred within this judicial district and concerns property located in the same.

## PARTIES

39.     All parties to this dispute are domiciled in California.

40.     Plaintiff Barton Wayne Fishback, is an individual and the owner of the Property since at least 2000, when he purchased the Property from its previous owners.  Fishback is a licensed architect, who pioneered green building methods and design in his illustrious architectural career. Now, the improvement of the Property, and the income derived therefrom, is Fishback's primary source of occupation and livelihood.   Fishback is directly, adversely and irreparably affected by the unconstitutional regulations, actions, violations and orders of Defendants, at issue here and identified below, until and unless the Court provides the relief prayed for in this Complaint.

41.     Defendant County of Ventura is a local government entity, a subdivision of the State of California, authorized to enforce the recycling and grading ordinances.

42.     Defendant County of Ventura Resource Management Agency, acting as a Local Enforcement Agency, is a department of the County of Ventura, authorized by the California Public Resources Code to conduct inspections of solid waste facilities within its jurisdiction.  The LEA inspects all aspects of facility operations, including physical plant, equipment, and vehicles.

43.     Defendant County of Ventura Public Works Agency is a department of the County of Ventura, tasked with the enforcement of Ventura County ordinances concerning grading and zoning.

44.     Defendant Joe T. Edmiston, individually and in his official capacity, is the executive director of the Santa Monica Mountains Conservancy and the Mountains Recreation and Conservation Authority.

45.     Defendant William C. Stratton, individually and in his official capacity, is the environmental health director of the Ventura County Resource Management Agency.

46.     Defendant Raymond Gutierrez, Jr., individually and in his official capacity, is the development and inspection manager for the Ventura County Public Works Agency.

47.     Defendant Charles Genkel, individually and in his official capacity, is the manager of the Technical Services Section of the County of Ventura Environmental Health Division.

48.     Plaintiff is currently unaware of the true names and capacities of Does 1 through 10, inclusive, and therefore sues those parties by such fictitious names. Does 1 through 10, inclusive, are agents of the named Defendants in some manner for the conduct described in this Complaint, or other persons or entities presently unknown to Plaintiff, who claim some legal or equitable interest in the actions or conduct that are the subject of this action. Plaintiff will amend this Complaint to show the true names and capacities of Does 1 through 10 when such names and capacities become known.

49.     Collectively, each defendant named and unnamed above is referred hereafter as "Defendants."

## ELEVENTH AMENDMENT

50.     Eleventh Amendment immunity is inapplicable to this case because Plaintiff is not making a demand upon the State's Treasury, the relief is prospective, and/or the State has given its consent by (i) accepting federal funds to administer the programs and laws that are being complained of, and (ii) by its express words to waiver within the enactments being complained of. Further, Plaintiff is suing state and local officers in their individual capacities for their individual unconstitutional acts and conduct.

## EXHAUSTION AND FUTILITY

51.     Plaintiff has exhausted all administrative remedies, and to the extent any administrative remedies remain yet to be exhausted, pursuing those remedies would be futile as Plaintiff has lodged protest after protest, initiated appeal after appeal, since acquiring the Property in 2004, only to be thwarted at each juncture and denied appropriate relief.

## GENERAL ALLEGATIONS

*The County's Efforts to Prevent Fishback from Improving His Land*

52.     On July 19, 2018, Charles Genkel, manager of the Technical Services Section of the County of Ventura Environmental Health Division ("EHD") submitted a declaration in support of an inspection warrant to the Superior Court of California, County of Ventura. The warrant sought inspection of Fishback's property.  Genkel's declaration contained multiple intentional misrepresentations and rank speculation:

(a) "The County has issued no agricultural grading exemptions for the property."

(b) "Fishback has a history of dumping or allowing dumping solid waste on the property."

(c) "The type of truck observed by the complainant on July 9 is typically used for waste, not soil."

(d) "In my opinion, based on Fishback's past behavior, if he were given such notice he would have the opportunity, and likely would, hide any new solid waste disposal sites from inspectors by covering and grading over the disposal site with dirt. That is exactly what happened when the County arranged an inspection of the property with Fishback and his attorney in connection with the Solid Waste Litigation. Solid waste had been covered with dirt and the County only discovered the disposal later after rains had washed away some of the dirt."

53.     Genkel asserted the County's right to enter Fishback's Property by concealing exemptions that apply and intentionally misrepresenting (i) materials on Fishback's Property as solid waste, (ii) activities on Fishback's Property as solid waste disposal, and (iii) facilities, which do not exist on Fishback's Property, as solid waste disposal facilities, by citing laws that do not exist or do not apply.  The Ventura County Building Code makes clear that "[u]nder the [Ventura County Building Code] no grading may be performed without a permit, except for certain exempted work." In other words, certain exempt work does not require a permit. Fishback's importation of top soil and grading with top soil for agricultural purposes is exempt.  Yet, Genkel insists he never obtained approval for his exemption.  An exemption by definition

does not require approval or preclearance; it is *exempt* from the requirements of the grading code.

54.     Genkel's declaration knowingly misrepresented the authority of the Ventura County Building Code, which also violates the CBC and State housing laws. The exemptions to the VCBC requirement to obtain a grading permit for placement of fill include agricultural grading only where the County Public Works Agency has (i) issued a written exemption, (ii) placement of 50 cubic yards of fill at a depth of no more than 3 feet creating a slope no greater than 2 units horizontal to 1 unit vertical, or (iii) placement of up to 1,000 cubic yards or one acre of fill at a depth of less than one foot on a natural slope of less than 20 percent (5:1).

55.     Genkel also intentionally misrepresented active ongoing litigation, in which no final judgment has issued, to malign Fishback as purposely refusing to comply with a permanent injunction:

> The property is encompassed by a judgment for a permanent injunction and civil penalties entered against Fishback on January 21,2015 in *Wayne Fishback, et al. v. County of Ventura, et al.,* VCSC case no. CIV 244304 (the "Solid Waste Litigation"). The judgment requires Fishbacks to submit a "clean closure plan" to EHD conforming to the requirements of California Code of Regulation, title 27, section 21810 and removing all solid waste disposed of on the property in accordance with that plan. The Fishbacks have not submitted a conforming plan.

The Fishbacks submitted a detailed and thorough plan in March 2015 to remediate on site.  The County simply did not like the plan.  Moreover, the permanent injunction, by its terms, applies to only a few of the many parcels that compose the Property.

56.     Genkel's declaration relies on the hearsay complaints of a hostile neighbor, Robert Mionske, who is a proven liar and with a criminal background, to apply for the inspection warrant:

> Probable Cause.  On July 9, 2018, a complainant sent the County an e-mail reporting that he observed a "roll off" truck entering the property through a gate across the access road on Sunday July 8, 2018 at about

7:00 a.m.; and that the back of the truck was covered when it went in and uncovered when it came out. . . The complainant reported that the person opening the gate is Fishback.

If any of the trucks contained solid waste (such as construction and demolition debris), dumping that waste anywhere on the property would be a violation of VCBC and Public Resources Code sections cited in paragraph 3 above.

57.     On July 19, 2018, based on false allegations, an inspection warrant issued:

You and your agents are hereby commanded to enter and insect the property described in the above caption (the "Property") for compliance with the Ventura County Building Code (Ord. No. 4496), Appendix J (pertaining to grading) and Ventura County ordinance Code section 4702 and Public Resources Code sections 44002, subdivision (a)(1), and 44000.5 (pertaining to disposal of solid waste).

58.     On July 20, 2018, the County and its agents conducted an inspection of Fishback's Property without any notice to Fishback.  After being notified of the inspection by his ranch operations manager, Gerardo Becerra, Fishback arrived just as the inspectors were leaving the Property.

59.     On July 24, 2018, Genkel made another declaration as part of the Return of Inspection Warrant.  This declaration intentionally misrepresented the agricultural grading on the Property, which is being done exclusively with soil, alleging instead that Fishback was disposing solid waste:

On the property, the inspectors observed and photographed unpermitted grading, a violation of the Ventura County Building Code, and unpermitted disposal of solid waste, a violation of the Public Resources Code and Ventura County Ordinance Code.

60.     On March 2, 2015 Fishback submitted, to the County, a response to the permanent injunction, which included his HECO exemption for the Property.

On August 2, 2018 the County of Ventura, Public Works Agency, Development and Inspection Services posted a Notice of Violation (NOV) and a Stop Work Order (SWO) at the access road gate. The NOV and SWO are pursuant to the Ventura County Building Code Appendix J sections 101.4, 101.5, 102,103.1, 104.1, and 114.2. This ordinance is not in force and the amendments to the California Building Code are unlawful. The NOV contains instructions that a grading permit exemption and/or a Hillside Erosion Control Ordinance (HECO) Plan must be obtained.

61.     The County is aware that Fishback has both a grading exemption and a HECO Plan exemption. Since 2005, Edmiston and his cohorts have worked with individual complainants, some with criminal records, environmental groups and enforcement agencies to prevent Fishback from repairing, maintaining, and improving his land using conservation programs promoted by the USDA, the NRCS, and the EPA, pursuant to RCRA and the CWA.  These conservation programs are administered at both the state and local levels of government.  Contrary to all the facts and evidence, multiple enforcement agencies have been pressured to characterize these conservation measures as "illegal grading and illegal dumping."

## FIRST CLAIM AGAINST ALL DEFENDANTS
### [Preliminary Injunction 28 U.S.C. §§ 1651 & 1657]

62.     Plaintiff refers to and incorporates by reference, as fully set forth herein, paragraphs 1 through 61 above.

63.     Plaintiff requests that the Court preliminarily enjoin Defendants, and each of them from executing or enforcing any formal or informal orders or notices from the County of Ventura or any other county or State Department or Agency concerning the Property, and Plaintiff's use of the Property.

64.     Section 1651 establishes this Court's right to issue all writs necessary or appropriate in aid of its jurisdiction and agreeable to the usages and principles of law and that the instant action is exactly of the nature for which Congress intended 28 U.S.C. §§ 1651 and 1657 Injunctions to be used.

65.     Since 2005 and, as recent as this July 2018, there has been an ongoing dispute over whether Defendants, and each of them, impermissibly and illegally encroached on Plaintiff's private property and constitutionally guaranteed Due Process Rights.  Defendants, and each of them, conspired to deprive Plaintiff of his property and rights through the issuance of orders and notices of violations that insisted upon inappropriate adherence to inapplicable ordinances and regulations, ignored conventions of due process in numerous ways, deprived Plaintiff of equal protection under the law, failed to adhere to honest governmental processes, and intentionally interfered with otherwise lawful governmental actions.

66.     Based on the forgoing acts, and Defendants' employment of a conspiracy to continue subjecting Plaintiff to a series of unlawful, wrongful, and improper acts for the purpose of frustrating and impeding and on Plaintiff's private property and Constitutional rights, Plaintiff has no other adequate remedy available to him.

## SECOND CLAIM AGAINST ALL DEFENDANTS

### [Violation of Procedural Due Process – 42 U.S.C. § 1983]

67.     Plaintiff refers to and incorporates by reference, as fully set forth herein, paragraphs 1 through 66 above.

68.     In furtherance of the conspiracy between them, and in violation of Plaintiff's Constitutional Right to Procedural Due Process, Defendants and each of them deprived Plaintiff of the opportunity to receive a fair hearing and benefit from honest governmental process at various times but most recently the false inspection warrant, permanent injunction, and illegal notices of violation.

69.     The EHD, in enforcing provisions of the PRC and County ordinances failed to act as required by law, refused to acknowledge the plain meaning and language of statutes, regulations and ordinances, issued notices of violations and stop work orders without proper factual or legal justifications, arbitrarily and selectively enforced inappropriate statutes, regulations and ordinances that were inapplicable to

materials and activities on the Property, including making intentional misrepresentations to the California Superior Court.

70.     Defendants, and each of them, acted under color of the statutes, regulations, ordinances, customs, and usages of the State of California and County of Ventura in improperly, wrongfully, and unlawfully citing, rejecting, and ignoring known enforcement standards and procedures.   These improper, wrongful and unlawful actions violated Plaintiff's Fifth and Fourteenth Amendment constitutional rights to Procedural Due Process.

71.     Defendants, and each of them, knew, were informed, and believed, as a reasonable person would know, be informed or believe, that by unlawfully, wrongfully and improperly citing, rejecting, and ignoring known inspection and enforcement standards and procedures, that they were denying Plaintiff his constitutional right to Procedural Due Process protected by the Fifth and Fourteenth Amendments.

72.     Further, Defendants' enforcement and inspection procedures, process and justifications on its face and as applied violate the Fifth and Fourteenth Amendment Due Process clauses.

73.     Yet, Plaintiff continues to be subjected to a series of unlawful, wrongful, and improper acts intentionally perpetrated by Defendants to deprive and dispossess Plaintiff of his Property and prevent Plaintiff from reasonably using his Property.

74.     The foregoing unlawful, wrongful and improper acts of Defendants, and each of them, are malicious, fraudulent, oppressive and intentional.   Therefore, Plaintiff is entitled to compensatory, punitive and exemplary damages of at least $200,000,000 or an amount to be proved at trial.

## THIRD CLAIM AGAINST ALL DEFENDANTS

### [Violation of Fourteenth Amendment Substantive Due Process: Failure to Follow Honest Governmental Process – 42 U.S.C. § 1983]

75.     Plaintiff refers to and incorporates by reference, as fully set forth herein, paragraphs 1 through 74 above.

76.     Defendants, and each of them individually and in furtherance of an alleged conspiracy, under color of statutes, ordinances, regulations, customs and usages of the State of California and County of Los Angeles, unlawfully, wrongfully, and improperly further violated Plaintiff's Fourteenth Amendment Substantive Due Process rights by performing unlawful, wrongful and improper acts against the Plaintiff relevant to the Property.

77.     Unlawful, wrongful and improper acts against Plaintiff included, but were not limited to:

(a)     Allowing, then subsequently rescinding consent, unlawfully and without basis in fact, to Plaintiff to improve his Property;

(b)     Asserting, without proof and contrary to known facts, that certain materials were being used in the improvements, when in fact they were not;

(c)     Asserting on numerous occasions, contrary to known law, that certain statutory provisions applied to Plaintiff's improvement project, when in fact said statutory provisions did not apply;

(d)     Asserting on numerous occasions, contrary to known law, that certain statutory exceptions and/or exemptions did not apply to the improvement project, when in fact those exceptions and/or exemptions did apply;

(e)     Intentionally ignoring and omitting known factual information to the detriment of Plaintiff on numerous occasions;

(f)     Intentionally citing known factual falsities to the detriment of Plaintiff on numerous occasions;

**COMPLAINT**

(g) Intentionally issuing unlawful notices of violation, and stop work orders that failed to conform to internal procedural safeguards and that were issued without basis in fact or law;

(h) Unlawfully and improperly refusing to consider proper and adequate evidence submitted by Plaintiff;

(i) Unlawfully and improperly interfering with and obstructing the relationship between Plaintiffs and other government entities; and

(j) Trespassing on Plaintiff's Property in violation of law.

78. Defendants, and each of them, conducted the aforementioned unlawful and dishonest acts despite the fact that they knew, as a reasonable person would have known, that these acts were contrary to honest governmental processes and the provisions and/or purposes of the United States Constitution and California law. Defendants further knew, as a reasonable person would have known, that by their unlawful and dishonest acts, they were denying Plaintiff his Constitutional right to Substantive Due Process under the Fourteenth Amendment.

79. By conducting the forgoing unlawful and dishonest acts, Defendants, and each of them, violated basic honest governmental processes, the United States Constitution and the provisions and purposes of California law.

80. As a direct and proximate result of Defendants depriving Plaintiff of his Fourteenth Amendment Substantive Due Process rights, Plaintiff has been and continues to suffer damages by being prevented from enjoying and utilizing his Property in a reasonable and legal manner. Plaintiff's damages constitute an amount to be proved at trial; Plaintiff continues to be threatened with possible civil penalties, costs, damages and criminal liability.

81. The unlawful, wrongful and improper conduct of Defendants unless and until enjoined and restrained by this Court's order, have and continue to cause great and irreparable damage and injury to Plaintiff by preventing Plaintiff from enjoying

and/or utilizing his Property, causing Plaintiff to sustain damages, including but not limited to, significant monetary costs and substantial devaluation of the Property.

82. The foregoing unlawful, wrongful and improper acts of Defendants, and each of them, are malicious, fraudulent, oppressive and intentional. Therefore, Plaintiff is entitled to compensatory, punitive and exemplary damages of at least $200,000,000 or an amount to be proved at trial.

### FOURTH CLAIM AGAINST ALL DEFENDANTS
### [Violation of Fourteenth Amendment Equal Protection]

83. Plaintiff refers to and incorporates by reference, as fully set forth herein, paragraphs 1 through 82 above.

84. Defendants, and each of them individually and in furtherance of the alleged conspiracy, acting under the color of the statutes, ordinances, regulations, customs and usages of the State of California and County of Ventura, applied and continue to apply in a malicious, disparate, irrational and/or plainly arbitrary manner, Title 14 of the California Code of Regulations, Division 7, Chapter 3, article 5.9 (§§ 17380 through 17386), article 5.95 (§§17387 through 17390), and article 6.0 (§ 17400, et seq.). These articles establish governing regulations for all aspects of construction work related to inert debris. In addition, Defendants, and each of them individually and in furtherance of the alleged conspiracy, acting under the color of the statutes, ordinances, regulations, customs and usages of the State of California and County of Ventura, applied and continue to apply in a malicious, disparate, irrational and/or plainly arbitrary manner, provisions of the VCBC related to Appendix J -- Grading, denying and intentionally refusing to recognize clear exemptions related to Plaintiff's agricultural activities on his agriculturally zoned property. Without basis in fact and in arbitrary and capricious manner, Defendants applied these governing laws differently to Plaintiff and Plaintiff's Property as opposed to others and other's property similarly situated.

85.     Defendants engaged in "Spot Zoning" with regard to the Property in the following ways:

    (a)  Requiring Plaintiff to obtain a grading permit despite the fact that the language of the allegedly applicable ordinance exempts Plaintiff from such a requirement and other persons and activities similarly situated have been exempted;

    (b)  Asserting on numerous occasions, contrary to known law, that certain statutory provisions applied to Plaintiff's improvement of his Property, when in fact said statutory provisions did not apply, a fact that Defendants have observed for other similarly situated persons and activities;

    (c)  Asserting on numerous occasions, contrary to known law, that certain statutory provisions did not apply to Plaintiff's improvement of his Property, when in fact said statutory provisions did apply, a fact that Defendants have observed for other similarly situated persons and activities;

    (d)  Intentionally issuing unlawful cease and desist orders, notices of violation, and corrective action orders that failed to confirm internal procedural safeguards that were issued without basis in fact or law to Plaintiff, but not to other similarly situated persons or activities; and

    (e)  Trespassing on Plaintiff's Property and not on other properties similarly situated.

86.     Defendants applied and continue to apply allegedly applicable state and local laws in such a way as to discriminate against Plaintiff, despite the fact that Defendants know, are informed, believe, as a reasonable person would know, be informed, or believe, that such conduct violates Plaintiff's Fourteenth Amendment Equal Protection rights.

87.    As a direct and proximate result of Defendants depriving Plaintiff of his Fourteenth Amendment Equal Protection rights through the aforementioned unlawful, wrongful, and improper acts, Plaintiff has and will continue to suffer damages and injury in an amount to be proved at trial.

88.    The foregoing unlawful, wrongful and improper acts of Defendants, and each of them, are malicious, fraudulent, oppressive and intentional.   Therefore, Plaintiff is entitled to compensatory, punitive and exemplary damages of at least $200,000,000 or an amount to be proved at trial.

## FIFTH CLAIM AGAINST ALL DEFENDANTS

## [Violation of the Fifth and Fourteenth Amendment Takings Clause]

89.    Plaintiff refers to and incorporates by reference, as fully set forth herein, paragraphs 1 through 88 above.

90.    Under the Fifth and Fourteenth Amendments of the United States Constitution, Defendants taking of private property for public use without paying just compensation and depriving Plaintiff of both substantive and procedural due process is compensable by damages.

91.    Defendants, and each of them, are governmental entities and actors with the capacity to sue and be sued, acting under the color of state law.

92.    Defendants, and each of them, conspired and infringed on Plaintiff's interests in his Property.  Defendants (i) impermissibly blocked and continues to block the sole private access road to and from the Property—the North American Cutoff, at various times arbitrarily without justification; (ii) designated public access trails as part of the "Rim of the Valley Trail" system that incur and traverse Plaintiff's Property; and (iii) imposed regulations and selectively enforced statutes, ordinances and regulations to prevent Plaintiff from improving the economic use and value of the Property.

93.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered injury, loss and damage, including an impermissible burden on his Property,

a reduction in value, and the loss of rights in the future to improve and/or develop his land to its highest and best use, without the benefit of just and fair compensation.

## SIXTH CLAIM AGAINST ALL DEFENDANTS

### [Violation of the California Constitution Takings Clause – Cal. Const., art. I, § 19]

94.    Plaintiff refers to and incorporates by reference, as fully set forth herein, paragraphs 1 through 93 above.

95.    Article I, section 19, of the California Constitution provides as follows: "Private property *may be taken or damaged* for public use only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner."  The scope of compensable injury is broader in California than other states or under the United States Constitution.  It includes "taking" or "damage" to property.

96.    Plaintiff's interests in his Property have been infringed by the collective acts of Defendants, and each of them.  Defendants (i) impermissibly blocked and block the sole private access road to and from the Property—Woolsey Canyon Road and Black Canyon Road, at various times arbitrarily without justification; (ii) designated public access trails as part of the "Rim of the Valley Trail" system that incur and traverse Plaintiff's Property; and (iii) imposed regulations and selectively enforced statutes, ordinances and regulations to prevent Plaintiff from improving the economic use and value of the Property.

97.    To the extent, Defendants are justified in taking rights to and in the Property, Plaintiff is entitled to just and fair compensation for these takings pursuant to Article I, section 19 of the California Constitution for the diminution in fair market value and loss of income from the Property.  To the extent, Defendants are not justified in taking rights to and in the Property, Plaintiff is entitled to just and fair compensation pursuant to Article I, section 19 of the California Constitution for the wrongful taking of Plaintiff's property rights.

## SEVENTH CLAIM AGAINST ALL DEFENDANTS

### [Declaratory Relief – Federal Preemption]

98.  Plaintiff refers to and incorporates by reference, as fully set forth herein, paragraphs 1 through 97 above.

99.  When Congress enacted RCRA and the Federal Government promulgated and set forth priorities for reuse, recycling and conservation under various federal programs, including the NRCS, the Federal Government *preempted* state and local regulations concerning the same issues and areas, specifically under 42 U.S.C. §§ 6901, 6902, 6941, et seq., and 6951, et seq.

100.  However, Defendants, and each of them, violated this doctrine in adopting and enforcing statutes, ordinances and regulations that conflict with RCRA and NRCS priorities.  Yet, Defendants maintain that no such conflicts exist.

101.  Therefore, an actual controversy exists between the parties concerning whether Defendants' interpretation, adoption and enforcement of state statutes and local ordinances conflict with existing Federal law and programs and preempted thereby.

102.  A judicial determination resolving this actual controversy is necessary and appropriate at this time.

## EIGHTH CLAIM AGAINST ALL DEFENDANTS

### [Declaratory Relief – Violation of the Dormant Commerce Clause]

103.  Plaintiff refers to and incorporates by reference, as fully set forth herein, paragraphs 1 through 102 above.

104.  When Congress enacted RCRA and the Federal Government promulgated and set forth priorities for reuse, recycling and conservation under various federal programs, including the NRCS, the Federal Government exercised its inherent powers under the Commerce Clause thereby occupying the field; state and local regulations concerning the same issues and areas must yield to Federal law, policies and priorities.

105.   However, Defendants, and each of them, violated this doctrine, facially and as applied to Plaintiff in adopting and enforcing statutes, ordinances and regulations that conflict with RCRA and NRCS priorities.  Yet, Defendants maintain that no such conflicts exist and the state and local laws are valid and enforceable.

106.   Therefore, an actual controversy exists between the parties concerning whether Defendants' interpretation, adoption and enforcement of state statutes and local ordinances concerning reuse and recycling invade on the Congress' Commerce Powers.

107.   A judicial determination resolving this actual controversy is necessary and appropriate at this time.

## NINTH CLAIM AGAINST ALL DEFENDANTS
### [Violation of Legitimate Police Powers]

108.   Plaintiff refers to and incorporates by reference, as fully set forth herein, paragraphs 1 through 107 above.

109.   Article XI, section 7 of the California Constitution, and the Government Code section 37100, provide that "[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations *not in conflict with general laws.*"  Similarly, under the Supremacy Clause of the United States Constitution, a state or locality cannot enact laws that conflict with Federal law.  To validly exercise their police powers, Defendants may only enact laws within the parameters established by the State Legislature and the State Legislatures may not enact laws that conflict with acts of Congress.

110.   Defendants violated these powers by enacting, interpreting and enforcing state and local laws that conflict with each other and in direct conflict with Federal law.

/ / /

/ / /

/ / /

**COMPLAINT**

**TENTH CLAIM AGAINST ALL DEFENDANTS**

**[Declaratory Relief—Intentional Misrepresentation of State Law]**

111.   Plaintiff refers to and incorporates by reference, as fully set forth herein, paragraphs 1 through 110 above.

112..  The County and EHD intentionally misrepresented Title 14 regulations, codified in the PRC, to characterize Plaintiff's legitimate agricultural construction activities as disposal activities and thus subject to regulation and enforcement by various agencies named as defendants in this action.  The other defendants, and each of them, were complicit in this misinterpretation of state law by coordinating efforts with the County to thwart Plaintiff's legitimate exercise of his constitutional rights to develop and improve his Property free from inapplicable regulations and enforcement.   Instead, Plaintiff was and continues to be forced to obtain permits, exemptions, comply with onerous and arbitrary requirements that are inapplicable to him, the Property, and the activity he is engaged in on the Property.

113.   Title 14, section 17388.2(a), the Public Resources Code states:

Excluded Activities.

(a) *The following disposal activities do not constitute C&D waste or inert debris operations or facilities for the purpose of this Article and are not required to meet the requirements set forth herein*:

(1) *Any use* (e.g., grading) of gravel, rock, soil, sand and similar, whether processed or not, that has never been used in connection with any structure, road, parking lot, or similar use.

(2) *Engineered fill activities* which have local permits as required, and are carried out in conjunction with a construction project (e.g., building and other construction, bridge and roadway work, development of pathways or riding trails, etc.), and which use uncontaminated concrete and/or fully cured asphalt which has been reduced in particle size to 2" or less as part of a recycling activity and concludes within two years from commencement.

(3) *Inert debris engineered fill activities* which conclude within one year of commencement and that meet all requirements of section 17388.3 of this Article, except subsections (b) inspections, (c) Plan, (d) State Minimum Standards, (g) final cover, and submittal of EA Notification.

(4) Removal and disposal of landslide debris containing no C&D waste by Federal, State and local government public works agencies and their

contractors, provided that the material removed from such sites is disposed in accordance with applicable law.

(5) Removal and disposal of sediment which has accumulated within irrigation or flood control facilities and which contains no solid waste, by Federal, State and local government public works agencies and their contractors, provided that the material removed from such sites is disposed or otherwise handled in accordance with applicable laws.

(6) The use of fully cured asphalt, uncontaminated concrete (including steel reinforcing rods embedded in the concrete), crushed glass, brick, ceramics, clay and clay products, which may be mixed with rock and soil, in connection with road building, road repair, airport runway construction, bridge and roadway work, levee work, flood control work, and all associated activities by Federal, State and local government public works agencies and their contractors.

(7) Existing C&D waste or inert debris disposal sites from which all waste and debris have been removed (clean closure) within one year after February 24, 2004, provided that the material removed from the sites is disposed in accordance with applicable law. The board may extend the time for clean closure by up to one year upon the applicant's showing of good cause for such an extension.

(Emphasis added.)

114.   Despite the explicit exemption for these "Excluded Activities" from specific regulatory requirements set forth in Title 14, Defendants required Plaintiff comply with standards and requirements that are wholly inapplicable to Plaintiff's specific situation.

115.   And just recently, Defendants noticed Plaintiff with a violation for not complying with Appendix J of the Ventura County Building Code, which exempts in relevant part:

SECTION J103.2 EXEMPTIONS.   A grading permit shall not be required for the following.

10. Grading to support irrigated agricultural production under an approved hillside erosion control plan by the Ventura County Resource Conservation District (VCRCD) in compliance with the Hillside Erosion Control Ordinance (HECO). Should the VCRCD exempt or deny a property owner from the requirements of the Hillside Erosion Control Ordinance, the property owner is required to obtain a grading permit or a formal grading permit exemption from the Building Official.

**COMPLAINT**

Plaintiff obtained and has operated under a valid, approved Hillside Erosion Control Plan since at least 2006.  Yet, the County refuses to acknowledge this exemption as to Plaintiff.

116.   As a result, an actual controversy exists between the parties concerning whether Defendants misinterpreted Title 14 and its own grading ordinance to create onerous inapplicable requirements, specifically targeting Plaintiff in violation of his constitutional rights.

139.   A judicial determination resolving this actual controversy is necessary and appropriate at this time.

**WHEREFORE**, Plaintiff demands a jury trial on all claims so eligible and prays for relief as follows:

1.   For preliminary injunctive relief;

2.   For damages, including exemplary damages, in the amount of $200,000,000 or according to proof at trial;

3.   For costs of suit;

4.   For attorney's fees as authorized by law; and

5.   For such other and further relief as the Court may deem proper.

DATED: August 10, 2018                      LAW OFFICE OF MAINAK D'ATTARAY


By: _____
      Mainak D'Attaray
      Attorneys for Plaintiff
      Barton Wayne Fishback

**COMPLAINT**